UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BAIN & COMPANY INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. _____ |
| JIM WOODS, | ) ) |
| Defendant. | ) ) ) |

## COMPLAINT AND JURY DEMAND

As and for its complaint against Defendant Jim Woods, Plaintiff Bain & Company Inc.

("Bain") alleges the following:

### Preliminary Statement

1.      This is an action to protect and enforce Bain's rights with respect to its

copyrighted and trademarked material, which include certain portions of its business, website,

and marketing material, and, most significantly, its well-known company name.  Defendant has

intentionally and illegally misappropriated Bain's trademarks and trade names, and infringed

upon Bain's copyrighted material, in a deliberate attempt to benefit from the name recognition,

business reputation, and goodwill associated with Bain.  Defendant has further registered the

domain www.bainconsultinggroup.com, and continues to hold himself out as operating a

business that he has variously referred to as "Bain," "Bain Consulting Group," and "Bain and

Company," which purportedly offers services that Defendant advertises as nearly identical to,

and in obvious competition with, those provided by Bain.  Defendant has expressly stated his

intention to use the name "Bain" to compete with Plaintiff Bain and that he plans to continue "using the name Bain or Bain consulting group to my pleasure."

2.      Despite numerous demands that Defendant cease and desist in his behavior, Defendant continues to misuse and misappropriate Bain's intellectual property in direct and intentional violation of the Lanham Act, the Copyright Act, and the Anti-Cybersquatting Consumer Protection Act. Rather than ceasing his illegal activity, Defendant has demanded that Bain pay him money to transfer the domain www.bainconsultinggroup.com to it, and has made a variety of threats against Bain in the event that Bain seeks further to protect its intellectual property rights. In Defendant's words, "If however you wish to buy our rights to the name you may do so for $20,000. Otherwise go to hell." When Bain refused to acquiesce to this demand, Defendant demanded that if Bain did not issue an apology to him, he would launch a "social media onslaught" against Bain. While continuing to infringe upon Bain's intellectual property, Defendant has also responded to demands that he cease doing so with such language as, ""Uou [sic] can kiss my black asd [sic]," "I am going to play hard ball with you," "Bain is a 'giant' who seeks to destroy me and I them," and "[y]ou pressured me for a guerilla war now you will have it."

### Parties

3.      Bain is a corporation organized under the laws of the Commonwealth of Massachusetts and with a principal place of business in Boston, Massachusetts.

4.      Upon information and belief, Defendant is an individual domiciled in Colorado.

### Jurisdiction and Venue

5.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it involves the application of federal statutory law. This Court also has jurisdiction

pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000, as the value of Bain's goodwill and intellectual property that the Defendant has attacked, sought to coopt, and threatens to damage far exceeds that amount.

6.      This Court has venue over this action pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in the District of Massachusetts, where Bain is headquartered, and a substantial part of the property that is the subject of the action is situated within the District of Massachusetts. Defendant has knowingly directed his attacks at Bain, which is based in Massachusetts. He has sent a variety of threatening and extortionate communications into Massachusetts in an effort to continue his acts of infringement. He has made financial demands of Bain, a Massachusetts company, in a proposal to sell his infringing domain name to Bain. All of Defendant's online infringements of Bain's intellectual property, including his efforts to sell consulting services using Bain's trademarks, trade names, and copyrighted content are or were available publicly within Massachusetts, and Defendant took no steps to prevent access to his infringing material from within Massachusetts.

### Factual Allegations

7.      Bain is a leading global business and management consulting firm serving clients across six continents. Bain has expended significant resources to develop and market its business name, reputation, and goodwill within the business and consulting communities over the past 40 or so years and, during this time, has serviced a majority of the Global 1000 companies.

8.     Bain is the owner of registered trademarks in "Bain & Company" (Registration Nos. 2,725,433 and 2,782,558), which have achieved incontestable status, as well as the trademark "Bain" (together with "Bain & Company," the "Bain Marks"), for which an application for registration is pending under Application Serial No. 85/577,226.  Bain uses these famous Bain Marks in connection with its global consulting activities, including business management and consultation, financial analysis, technology consultation in the field of electronic commerce systems and communication systems, corporate renewal, restructuring, and turnaround.

9.     Bain has used the Bain & Company mark for its consulting business in interstate commerce continuously since in or about April 1973.  Bain has continuously used the Bain Marks in the United States and abroad, and has invested in and continues to invest in publishing and other marketing activities to develop and enhance the fame of the Bain Marks.  This investment has led to a close identification of the Bain Marks with Bain's global consulting activities and in considerable goodwill associated with the Bain Marks.

10.     In or about late February 2012, Bain discovered a website at the domain www.bainconsultinggroup.com.  Bain further discovered that that domain name was registered to and being used by a purported consulting business calling itself Bain Consulting Group, operated by Defendant.  Further internet searches revealed that Defendant was using the trademarks Bain, Bain and Company, Bain Consulting Group, and possibly certain other infringing variations of the Bain Marks, to identify a consulting business of which he purported to be President and founder.

11.     Bain also uncovered that on the www.bainconsultinggroup.com website,

Defendant was using Bain's copyrighted content from its own website at www.bain.com,

without Bain's permission.  Bain's copyrighted content is:

> Bain & Company is the consulting firm the world's business
> leaders come to when they want enduring results, and a partner
> who cares as much as they do about getting them.  Together, we
> find value across boundaries, develop insights they act on, and
> energize their teams to sustain success.

Bain filed for copyright registration of this material on March 14, 2012.  The nearly identical

content that Defendant improperly used on www.bainconsultinggroup.com is:

> Bain is the consulting firm the business leaders come to when they
> want long term results, and a partner who cares as much as they do
> about getting them.  Together, we find value across boundaries,
> develop insights they act on, and energize their culture to sustain
> profitable success.

12.     The clear intent behind the Defendant's infringement of the Bain Marks and

Bain's copyrighted material was to confuse and mislead potential customers through a

misappropriation of Bain's trademarks, trade names, and copyrighted works.  In fact, Defendant

has expressly admitted in writing that his marketing efforts using the name "Bain" are a means of

competing with Bain, writing in response to demands that he cease his infringement, "I have and

always will be competitive with regard to my marketing."

13.     Bain also learned through its review of the www.bainconsultinggroup.com

website and other online sites that Woods similarly used copyrighted material from other global

consulting firms.  Woods's strategy was thus to use the intellectual property of well-known

consulting firms to promote his own consulting business.

14.     On or about March 1, 2012, Bain's in-house attorney sent Woods a letter

informing him of Bain's ownership and usage of the Bain Marks and demanded, among other

things, that he (i) discontinue his infringement of the Bain Marks; (ii) identify and provide

samples of advertising, print materials, newspapers, etc. where he infringed the Bain Marks; and

(iii) discontinue use of www.bainconsultinggroup.com and transfer that domain name to Bain.

15.     On or about March 5, 2012, Defendant responded to the March 1, 2012 letter via

email addressed to Bain's in-house attorney.  Defendant refused to comply with the demands of

the March 1, 2012 letter, threatening to post future correspondence from Bain "by my hand or

blog allies."  Defendant's e-mail further stated:

> Let's see how the continuing negative publicity effects [sic] your
> business.  We quite frankly would relish the publicity.
>
> If however you wish to buy our rights to the name you may do so
> for $20,000.  Otherwise go to hell.

16.     Approximately four minutes later, Defendant transmitted a second e-mail to

Bain's in-house attorney, threatening that if he did not receive a letter of apology, he would

initiate a "social media onslaught" against Bain.

17.     On or about March 14, 2012, outside counsel for Bain followed up on Bain's

initial demand with a second cease and desist letter to Defendant, referencing the March 1, 2012

letter, informing him that material contained on the www.bainconsultinggroup.com website

infringed Bain's copyright, and again demanding that Defendant cease infringement of the Bain

Marks and all misuse of Bain's intellectual property.  Bain's counsel also alerted Defendant that

it had filed claims of infringement with the registrar of the domain

www.bainconsultinggroup.com.

18.     Defendant responded to the March 14, 2012 letter with a phone call to the office

of Bain's outside counsel, accusing her of "extortion."  Specifically, Woods left the message:

"Tell her [Bain's outside counsel] her extortion phone call has been forwarded to my lawyer."

19.     On or about March 23, 2012, Bain discovered that the domain www.bainconsultinggroup.com began resolving to a webpage that reads, "Sorry!  This site is not currently available."  Defendant nonetheless has refused to transfer registration of the www.bainconsultinggroup.com domain to Bain, has told Bain that he will be "reopening" his use of the Bain Consulting Group website, and, in the meantime, has continued to use the Bain Marks in other ways for purposes of promoting his own consulting business.

20.     For example, to this day, Woods is using the Bain Marks in at least the following ways (emphases added):

    a.  On a website that Woods maintains for his consulting company "Innothink Group," there appears a purported Press Release that contains the header "About *Bain Consulting Group*"

    b.  At the website http://jimwoods.posterous.com, Woods identifies himself as "President and founder of *Bain Consulting Group*"

    c.  Also at the website http://jimwoods.posterous.com, Woods has provided at least 75 articles or posts that can be accessed by clicking on links he has provided labeled "*Bain Consulting Group*," "management consulting *Bain Consulting Group*," "*Bain and Company*," and "*Bain*"

    d.  Also at http://jimwoods.posterous.com, the following content appears:

    • "Here at *Bain Consulting Group* we found this article on leadership inertia to be particularly appropriate considering the malaize many companies are in."

    • "We see things differently.  We can help you.  Our ideas are resultant of our insatiable curiosity and the systematic efforts of our practices to re-imagine better ways of doing everything.  *Bain Consulting Group* is a leading management consulting firm expert in strategic innovation, growth, and competitive advantage.  Please contact us to schedule a consulting or speaking engagement."

    e.  Woods's website directs readers to contact his business at *info@bainconsultinggroup.com*.  Woods has used, and may be continuing to use, the email address *jim@bainconsultinggroup.com* for himself.

    f.  Woods maintains a blog at http://jimwoods.tumblr.com, where he holds himself out as President and founder of *Bain Consulting Group*

     g.     In a February 2012 "Tweet" using the website www.twitter.com, which is still publicly available through Woods's Twitter account, Woods solicits subscriptions to the "***Bain Consulting Group*** newsletter"

     h.     In a January 2012 "Tweet" that is still publicly available through Woods's Twitter account, Woods describes ***Bain Consulting Group*** as a "leading management consulting firm helping companies innovate and grow"

21.     On or about March 27, 2012, Bain's counsel sent Defendant a third cease and desist letter identifying ways in which Defendant continued to infringe Bain's intellectual property notwithstanding the change to the content located at www.bainconsultinggroup.com, and demanding that he discontinue all use of the Bain name, including use of the Bain Marks on his websites and blogs. Bain also demanded again that Defendant transfer to it the domain www.bainconsultinggroup.com.

22.     Defendant responded to Bain's counsel with two emails the same day. The first claimed, falsely, that all references to Bain had been removed. That email ended with, "Uou [sic] can kiss my black asd [sic]." Other than the content at www.bainconsultinggroup.com, Woods has not removed the content described herein, which remains available online.

23.     The second email that Woods sent on March 27, 2012 made clear that Woods would take no further corrective action, stating:

> Somewhere along the line you and your team were under the impression you could intimidate me. Bring it on.
>
> I will make no other concessions to you.
>
> In future your correspondence will be sent in the form of a blog to the universe.

24.     Defendant has continued to threaten Bain if it continues its investigation and efforts to protect its intellectual property. On March 29, 2012, Defendant wrote to Bain's counsel:

My attorney tells me I have reason to pursue actions against bain. We have monitored your firms [sic] extortion calls and demands and my various sites and LinkedIn. Consider this my proverbial shot across the bow. Cease harassing me.

25.     Even more recently, on April 2, 2012, Defendant told Bain's outside counsel that he is "reopen[ing] the Bain Consulting Group," as part of a "guerrilla war" that he is now launching against Bain. At the same time, he claimed that he was the creator of the Bain Consulting Group brand, that his intent is now to "destroy" Bain, and that he considers himself free to use "the name Bain or Bain consulting group to my pleasure."

26.     In this context, Defendant also repeated his earlier demand that Bain pay him money for the domain name, telling Bain's counsel, "[y]ou understand how to settle this matter to my satisfaction. I suggest you do so."

### COUNT ONE
### Federal Trademark Violation

27.     Bain incorporates and re-alleges the allegations contained in Paragraphs 1 through 26 as if fully set forth herein.

28.     Bain owns valid and enforceable trademarks and trade names associated with its consulting business, including Bain & Company and Bain.

29.     Bain's trademarks and trade names are distinctive, having a strong tendency to identify the services sold under those marks.

30.     The names and marks that Defendant has used and is using are identical or highly similar to the Bain Marks, such that a substantial likelihood of confusion exists as between the marks.

31.     Defendant has knowingly, willfully, and intentionally engaged in, and continues to engage in, the unauthorized use of Bain's protected trademarks and trade names in connection with the sale, offering for sale, and advertising of consulting and other related services.

32.     Defendant's infringement of the Bain Marks in connection with his consulting services is likely to cause confusion, mistake, and deception among consumers as to the origin of or sponsorship of the services being offered by Defendant, and is likely to deceive the public into believing that said services emanate from, originate from, are associated with, and/or are otherwise authorized or endorsed by Bain, all to the damage and detriment of Bain's reputation and goodwill.

33.     As a result of Defendant's conduct, Bain has suffered irreparable injury to the extent it has:  (a) lost the ability to control the commercial and trade use of its trademarks and trade names; (b) lost earnings as a result of diverted customers; and (c) suffered damage to its reputation and goodwill.  Unless Defendant is preliminarily and permanently enjoined from such conduct, Bain will continue to suffer such irreparable injury to its goodwill and reputation.  Bain has no adequate remedy at law.

34.     Defendant's actions have caused and threaten to cause harm to Bain's business, including, but not limited to, the costs associated with identifying and seeking to have removed Defendant's unauthorized and infringing use of Bain's intellectual property.

### COUNT TWO
### FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN

35.     Bain incorporates and re-alleges the allegations contained in Paragraphs 1 through 34 as if fully set forth herein.

36.     Defendant's infringement of the Bain Marks in connection with his offered services misrepresents and falsely suggests to the general public the origin and source of its services and creates a likelihood of confusion by consumers as to the source, sponsorship, and endorsement of such services.

37.    Defendant's unlawful and unauthorized infringement of the Bain Marks on or in connection with his offered services creates the express and implied misrepresentations that his services are authorized, endorsed, or approved by Bain when they are not.

38.    Defendant's conduct as described above is done willfully with knowledge of and/or reckless disregard for Bain's rights.

39.    As a result of Defendant's conduct, Bain has suffered irreparable injury to the extent it has:  (a) lost the ability to control the commercial and trade use of its trademarks and trade names; (b) lost earnings as a result of diverted customers; and (c) suffered damage to its reputation and goodwill.  Unless Defendant is preliminarily and permanently enjoined from such conduct, Bain will continue to suffer such irreparable injury to its goodwill and reputation.  Bain has no adequate remedy at law.

40.    Defendant's actions have caused and threaten to cause harm to Bain's business, including but not limited to the costs associated with identifying and seeking to have removed Woods's illicit use of Bain's intellectual property.

## COUNT THREE
## FEDERAL DILUTION

41.    Bain incorporates and re-alleges the allegations contained in Paragraphs 1 through 40 as if fully set forth herein.

42.    Bain's Marks are both "famous" and "distinctive" within the meaning of § 43(c) of the Lanham Act, 15 U.S.C. §1125(c)(1), and were famous and distinctive prior to Defendant's use of them as alleged herein.

43.    Defendant's infringement of the Bain Marks in connection with his business offerings dilutes the distinctive quality of the Bain Marks, and was done with the willful intent to trade on Bain's reputation and goodwill and/or to cause dilution of the Bain Marks.

44.     Defendant's infringement of the Bain Marks was done with notice and full knowledge that such use was not authorized or licensed by Bain.

45.     As a result of Defendant's conduct, Bain has suffered irreparable injury to the extent it has:  (a) lost the ability to control the commercial and trade use of its trademarks and trade names; (b) lost earnings as a result of diverted customers; and (c) suffered damage to its reputation and goodwill.  Unless Defendant is preliminarily and permanently enjoined from such conduct, Bain will continue to suffer such irreparable injury to its goodwill and reputation.  Bain has no adequate remedy at law.

46.     Defendant's actions have caused and threaten to cause harm to Bain's business, including but not limited to the costs associated with identifying and seeking to have removed Woods's illicit use of Bain's intellectual property.

### COUNT FOUR
### COPYRIGHT VIOLATION

47.     Bain incorporates and re-alleges the allegations contained in Paragraphs 1 through 46 as if fully set forth herein.

48.     Bain has a valid copyright in the content contained on its website.

49.     Defendant had access to Bain's copyrighted work.

50.     Defendant infringed on Bain's copyright by copying and posting publicly on his website content that is identical or substantially similar to the protected content on Bain's website.

51.     Defendant did not independently create the content contained on his website that is identical or substantially similar to Bain's content.

52.     Defendant has knowingly and intentionally infringed upon Bain's copyrighted content.

53.     As a result of Defendant's conduct, Bain has suffered irreparable injury to the extent it has:  (a) lost the ability to control the commercial and trade use of its copyrighted material; (b) lost earnings as a result of diverted customers; and (c) suffered damage to its reputation and goodwill.  Unless Defendant is preliminarily and permanently enjoined from such conduct, Bain will continue to suffer such irreparable injury to its goodwill and reputation.  Bain has no adequate remedy at law.

54.     Defendant's actions have caused and threaten to cause harm to Bain's business, including but not limited to the costs associated with identifying and seeking to have removed Woods's illicit use of Bain's intellectual property and damage to the value of Bain's copyrighted works and its reputation.

### COUNT FIVE
### ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT

55.     Bain incorporates and re-alleges the allegations contained in Paragraphs 1 through 54 as if fully set forth herein.

56.     Bain owns valid and enforceable trademarks and trade names associated with its consulting business, including Bain & Company and Bain.

57.     Defendant registered, has used, refuses to transfer to Bain, and could at any moment resume use of the domain www.bainconsultinggroup.com, which is substantially similar to Bain's trademarks and trade names, with a bad faith intent to profit from the use of the domain name.  Defendant's bad faith has included a demand that Bain pay him $20,000 to transfer the name.

58.     Defendant's actions have caused and threaten to cause harm to Bain's business, including but not limited to the costs associated with identifying and seeking to have removed Defendant's illicit use of Bain's intellectual property.

59.     As a result of Defendant's conduct, Bain has suffered irreparable injury to the extent it has:  (a) lost the ability to control the commercial and trade use of its trademarks and trade names; (b) lost earnings as a result of diverted customers; and (c) suffered damage to its reputation and goodwill.  Unless Defendant is preliminarily and permanently enjoined from such conduct, Bain will continue to suffer such irreparable injury to its goodwill and reputation.  Bain has no adequate remedy at law.

## PLAINTIFF DEMANDS A TRIAL BY JURY

## PRAYER FOR RELIEF

WHEREFORE, Bain prays for the following relief:

1.     That judgment be entered in its favor on all counts of the Complaint;

2.     That the Court issue a temporary restraining order, a preliminary injunction, and a permanent injunction enjoining Woods from further violating and misusing Bain's intellectual property and requiring him to transfer to Bain the domain www.bainconsultinggroup.com;

3.     That the Court award to Bain compensatory, statutory, and multiple damages, with pre-judgment and post-judgment interest, in the maximum amount allowed by law;

4.     That the Court award to Bain its attorneys' fees, costs, and expenses; and

5.     That the Court award to Bain any and all further and other relief to which it may be entitled at law or in equity.

April 4, 2012

Respectfully submitted,

BAIN & COMPANY INC.

By its attorneys,

/s/ Joshua L. Solomon
Barry S. Pollack (BBO#642064)
    bpollack@sandw.com
Joshua L. Solomon (BBO #657761)
    jsolomon@sandw.com
Amy Lyster (BBO # 667263)
    alyster@sandw.com
Sullivan & Worcester LLP
One Post Office Square
Boston, MA 02109
Tele:  (617) 338-2800
Fax:  (617) 338-2880