UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BAIN & COMPANY INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. _____ |
| | ) |
| JIM WOODS, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Introduction ........................................................................................................ 1

Factual Background ............................................................................................ 2

    Bain's Intellectual Property ............................................................................ 2

    Woods's Misuse of Bain's Intellectual Property ............................................ 3

    Woods's Refusal to Cease and Desist .............................................................. 5

    Woods's Ongoing And Threatened Further Misuse Of Bain's Trademarks ...... 7

Discussion .......................................................................................................... 9

    I.      Bain Is Likely To Succeed On The Merits Of Its Trademark Claims. ......... 10

            A.      Bain's Trademarks Are Valid Marks Entitled To Protection. .................. 11

            B.      Consumers Are Likely To Be Confused By Woods's Use of Bain's Trademarks And Trade Names. .............................................................. 12

    II.     An Injunction Is Necessary To Prevent Irreparable Harm ...................... 16

    III.    The Balance Of Harms And The Public Interest Support An Injunction. ............ 17

Conclusion ........................................................................................................ 18

Plaintiff Bain & Company Inc. ("Bain"), through its attorneys, submits this memorandum in support of its motion for a temporary restraining order and preliminary injunction against Defendant Jim Woods, preventing him from further violating, misusing, misappropriating, and infringing upon Bain's intellectual property.

**Introduction**

Bain is a global leader in business and management consulting, with significant name recognition both nationally and internationally and has provided nearly 40 years of service across various industries. Bain recently discovered that Defendant Jim Woods has been using the Bain trademark and trade names to refer to a consulting business that he has labeled Bain, Bain and Company, and Bain Consulting Group, of which he claims to be the President and founder. Among other things, Woods has registered and used the domain www.bainconsultinggroup.com for this business, which offers consulting services that are advertised as nearly identical to, and in obvious competition with, those provided by Bain; Woods has copied certain copyrighted material from Bain's website located at www.bain.com, using Bain's copyrighted content on his own website to promote his services; and Woods has held and continues to hold himself out as associated with Plaintiff Bain on various websites, blogs, and Twitter. Bain has no relation to Woods and no connection whatsoever to Woods's purported consulting business.

Over the past several weeks, Bain has repeatedly contacted Woods and demanded that he cease his unauthorized use of Bain's trademarks, trade names, and other intellectual property. Rather than complying with this request, Woods has responded with a demand that Bain pay him money to transfer the domain www.bainconsultinggroup.com to it, as well as a variety of threats against Bain if Bain seeks to protect its intellectual property rights. In Woods's words, "If however you wish to buy our rights to the name you may do

so for $20,000. Otherwise go to hell." When Bain refused to acquiesce to this demand, Woods demanded that if Bain did not apologize to him, he would launch a "social media onslaught" against Bain. While continuing to infringe upon Bain's intellectual property, Woods has responded to demands that he cease doing so with such language as, "Uou [sic] can kiss my black asd [sic]," "I am going to play hard ball with you," and "[y]ou pressured me for a guerilla war now you will have it."

Ultimately, just this week, on April 2, 2012, Woods made clear that he intends to persist in his infringement of Bain's intellectual property and that that he views himself as free to "us[e] the name Bain or Bain consulting group to my pleasure." Woods's conduct is thus intentional, willful, and reckless, and creates the false impression that Woods and his business are associated with, sponsored by, or endorsed by Bain. Bain has suffered irreparable injury to the extent it has lost the right to control the commercial and trade use of its intellectual property, and Woods's conduct threatens Bain's earnings as a result of diverted customers and damage to Bain's reputation and goodwill. Bain respectfully requests that this Court issue a temporary restraining order and preliminary injunction preventing Woods from further violating, misusing, misappropriating, and infringing upon Bain's trademarks and trade names.

### Factual Background

## BAIN'S INTELLECTUAL PROPERTY

For the past 40 years, Bain has serviced clients across six continents, including a majority of the world's Global 1000 companies. Bain has 47 offices in 30 countries and more than 5,500 employees. It is considered one of the most prestigious consulting firms in the world, ranks first on the Vault Consulting 50, and has been named the Best Firm to

Work For by Consulting Magazine for nine consecutive years.  <u>See</u> Declaration of Wendy Miller ¶ 2.

Bain has used the "Bain & Company" and "Bain" trademarks and trade names for its consulting business in interstate commerce continuously since in or about April 1973.  Bain has continuously used these trademarks and trade names in the United States and abroad, and has invested in and continues to invest in publishing and other marketing activities to develop and enhance the recognition and reputation of the Bain brand.  Among Bain's efforts in this regard is a website that it maintains at www.bain.com, which is heavily branded with the Bain trademarks.  This investment has led to a close identification of the Bain trademarks with Bain's global consulting activities and considerable goodwill associated with the Bain trademarks.  <u>Id.</u> ¶ 3.

Bain is the owner of federally registered trademarks in "Bain & Company" (Registration Nos. 2,725,433 and 2,782,558), which have achieved incontestable status.  Bain also owns the trademark "Bain," for which registration is pending (together with "Bain & Company," the "Bain Marks").  Records from the United States Patent and Trademark Office, Trademark Application and Registration Retrieval database, evidencing such registrations and application, including evidence of incontestable status for "Bain & Company," are attached to the Declaration of Jennifer Major at Exhibit A.  Bain uses the Bain Marks in connection with its global consulting activities, including business management and consultation, financial analysis, technology consultation in the field of electronic commerce systems and communication systems, corporate renewal, restructuring, and turnaround.   Miller Decl. ¶ 4.

## WOODS'S MISUSE OF BAIN'S INTELLECTUAL PROPERTY

In late February 2012, Bain discovered that the domain www.bainconsultinggroup.com was registered to and being used by Woods for a consulting

business that he called Bain Consulting Group.  Further internet searches revealed that Woods was using the names Bain, Bain and Company, and Bain Consulting Group  to identify this consulting business of which he purported to be President and founder.  Copies of materials showing Woods's use of the www.bainconsultinggroup.com domain and the name "Bain" in connection with his consulting business are attached to the Major Declaration at Exhibit B.

Bain also uncovered that on the www.bainconsultinggroup.com website, Woods was using Bain's copyrighted content from its website, without Bain's permission.  Bain's copyrighted content is:

> Bain & Company is the consulting firm the world's business leaders come to when they want enduring results, and a partner who cares as much as they do about getting them. Together, we find value across boundaries, develop insights they act on, and energize their teams to sustain success.

A copy of a page from Bain's website containing this content is attached to the Miller Declaration at Exhibit A.  The nearly identical content that Woods improperly used on www.bainconsultinggroup.com is:

> Bain is the consulting firm the business leaders come to when they want long term results, and a partner who cares as much as they do about getting them.  Together, we find value across boundaries, develop insights they act on, and energize their culture to sustain profitable success.

A copy of a page from Woods's website containing this content is attached to the Major Declaration at Exhibit C.

As evidenced by Woods's copying and use of this pilfered language on a website branded with the Bain name and promoting consulting services, Wood's clear intent in infringing the Bain Marks was to confuse and mislead potential customers, and trade on the reputation of Bain's brand, through a misappropriation of Bain's trade names, trademarks, and copyrighted works.

## WOODS'S REFUSAL TO CEASE AND DESIST

Bain has repeatedly demanded that Woods cease his misuse of the Bain Marks. On or about March 1, 2012, Bain's in-house attorney sent Woods a letter informing him of Bain's ownership and usage of the Bain Marks and demanded, among other things, that he (i) discontinue his infringement of the Bain Marks; (ii) identify and provide samples of advertising, print materials, newspapers, etc. where he infringed the Bain Marks; and (iii) discontinue use of www.bainconsultinggroup.com, and transfer that domain name to Bain.  A copy of Bain's March 1, 2012 letter to Woods is attached to the Declaration of Welly Tantono as Exhibit A.

On or about March 5, 2012, Woods responded to the March 1, 2012 letter via email. Woods refused to comply with the demands of the March 1 letter, instead threatening to post future correspondence from Bain "by my hand or blog allies."  Woods's e-mail further stated:

> Let's see how the continuing negative publicity effects [sic] your business.  We quite frankly would relish the publicity.
>
> If however you wish to buy our rights to the name you may do so for $20,000. Otherwise go to hell.

A copy of Woods's email is attached to the Tantono Declaration as Exhibit B.

Approximately four minutes later, Woods sent a second e-mail, stating: "If I do not receive a letter of apology from you within 5 days I will begin my social media onslaught."  A copy of this email is attached to the Tantono Declaration as Exhibit C.

On or about March 14, 2012, outside counsel for Bain sent a second cease and desist letter to Woods, referencing the March 1, 2012 letter, informing Woods of certain material appearing on the www.bainconsultinggroup.com website that infringed Bain's copyrighted material, and again demanding that he cease infringement of the Bain Marks and all misuse of Bain's intellectual property.  Bain's counsel also alerted Woods that it had filed claims of

infringement with the registrar of the domain www.bainconsultinggroup.com. A copy of Bain's counsel's letter is attached to the Declaration of Kimberly Herman as Exhibit A.

Woods responded to the March 14, 2012 letter with a phone call to the office of Bain's outside counsel, accusing her of "extortion." Specifically, Woods left the message, "Tell her her extortion phone call has been forwarded to my lawyer." See Herman Declaration ¶ 3 and Exhibit B.

On or about March 23, 2012, Bain discovered that the domain www.bainconsultinggroup.com began resolving to a webpage that reads "Sorry! This site is not currently available." Woods nonetheless refused to transfer registration of the www.bainconsultinggroup.com domain to Bain, continued to use the Bain Marks in other ways for purposes of promoting his own consulting business, and has since stated his intention to resume use of the www.bainconsultinggroup.com website. See infra at 9-11.

On or about March 27, 2012, Bain's counsel thus sent Woods a third cease and desist letter identifying ways in which Woods continued to infringe Bain's intellectual property and demanding that he discontinue all infringement of the Bain Marks, including use of the Bain Marks on his websites and blogs. Bain also demanded again that Woods transfer to it the domain www.bainconsultinggroup.com. A copy of the March 27, 2012 letter is attached to the Herman Declaration as Exhibit C.

Woods responded to Bain's counsel with two emails the same day. The first claimed, falsely, that all references to Bain had been removed. It ended with, "Uou [sic] can kiss my black asd [sic]." A copy of Wood's first March 27, 2012 email is attached to the Herman Declaration as Exhibit D. Contrary to Woods's representation, other than the content located at

www.bainconsultinggroup.com, Woods had not, and still has not, removed the content described

herein, which remains available online.  See infra at 9-11.

The second email that Woods sent on March 27, 2012 made clear that Woods would take

no further corrective action, stating (emphasis added):

> Somewhere along the line you and your team were under the impression you
> could intimidate me.  Bring it on.
>
> *I will make no other concessions to you.*
>
> In future your correspondence will be sent in the form of a blog to the universe.

A copy of Woods's second March 27, 2012 email is attached to the Herman Declaration at

Exhibit E.

## WOODS'S ONGOING AND THREATENED
## FURTHER MISUSE OF BAIN'S TRADEMARKS

Woods continues to misuse the Bain Marks in at least the following ways (emphases

added):

- On a website that Woods maintains for his consulting business, which he is now apparently calling "Innothink Group," there appears a purported Press Release that contains the header "About ***Bain Consulting Group***"

- At the website http://jimwoods.posterous.com, Woods identifies himself as "President and founder of ***Bain Consulting Group***"

- Also at the website http://jimwoods.posterous.com, Woods has provided at least 75 articles or posts that can be accessed by clicking on links he has provided labeled "***Bain Consulting Group***," "management consulting ***Bain Consulting Group***," "***Bain and Company***," and "***Bain***"

- Also at http://jimwoods.posterous.com, the following language appears:

  - "Here at ***Bain Consulting Group*** we found this article on leadership inertia to be particularly appropriate considering the malaize many companies are in."

  - "We see things differently.  We can help you. Our ideas are resultant of our insatiable curiosity and the systematic efforts of our practices to re-imagine better ways of doing everything. ***Bain Consulting Group*** is a leading management consulting firm expert in strategic innovation, growth, and

competitive advantage.  Please contact us to schedule a consulting or speaking engagement."

- Woods's website directs readers to contact his business at *info@bainconsultinggroup.com*.  Woods has used, and may be continuing to use, the email address *jim@bainconsultinggroup.com* for himself.

- Woods maintains a blog at http://jimwoods.tumblr.com, where he holds himself out as President and founder of *Bain Consulting Group*

- In a February 2012 "Tweet" using the website www.twitter.com, which is still publicly available through Woods's Twitter account, Woods solicits subscriptions to the "*Bain Consulting Group* newsletter"

- In a January 2012 "Tweet" that is still publicly available through Woods's Twitter account, Woods describes *Bain Consulting Group* as a "leading management consulting firm helping companies innovate and grow"

Copies of these materials are provided with the Major Declaration as Exhibit D.

Woods thus continues to engage in illegal infringement of the Bain Marks despite repeated demands that he stop doing so.  That he does so knowingly and willfully is evidenced by his threatening and defiant behavior, such as his writing in a March 29, 2012 email to Bain's counsel:

My attorney tells me I have reason to pursue actions against bain.  We have monitored your firms [sic] extortion calls and demands and my various sites and LinkedIn.  Consider this my proverbial shot across the bow.  Cease harassing me.

A copy of Woods's March 29, 2012 email is attached to the Herman Declaration at Exhibit F.  Woods's tone increased in hostility in an April 2, 2012 email, in which he wrote:

- "As I have forwarded your letters to the New York Times.  I am going to play hard ball with you."

- "Bain is a 'giant' who seeks to destroy me and I them."

- "[T]his is now war."

- "You pressured me for a guerrilla war now you will have it."

A copy of Woods's April 2, 2012 email is attached to the Herman Declaration at

Exhibit G.

Most troubling, and leaving Bain no choice but to seek immediate injunctive

relief, Woods also wrote in his April 2, 2012 email that he plans "to reopen the Bain

Consulting Group" (i.e. the www.bainconsultinggroup.com website that he had taken

offline) and that he views himself as free to "us[e] the name Bain or Bain consulting

group to my pleasure." Id. Woods added that he considers himself to have created the

"Bain Consulting Group" brand and admitted that, "I have and always will be

competitive with regard to my marketing." Id. He ended his April 2, 2012 email with a

reference back to his earlier demand for payment in exchange for transferring the

www.bainconsultinggroup.com domain to Bain, writing, "[y]ou understand how to settle

this matter to my satisfaction. I suggest you do so." Id.

### Discussion

Bain is entitled to a temporary restraining order and preliminary injunction enjoining

Woods's use of Bain's intellectual property because: (i) Bain is likely to succeed on the merits of

its trademark claims; (ii) Bain is suffering and will continue to suffer irreparable harm if a

temporary restraining order and preliminary injunction are not issued; (iii) the balance of

hardships weighs in Bain's favor; and (iv) the injunctive relief requested by Bain will not harm

the public interest. See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st

Cir. 1996). The greater the likelihood of success on the merits, the lesser the showing of

irreparable harm that is required of a movant. Id. at 19. As the First Circuit has held,

"[l]ikelihood of success is the main bearing wall of the four-factor framework." Id. at 16. In

fact, the importance of likelihood of success is "magnified" in the trademark context:

While all these factors must be weighed, the cynosure of this four-part test is more often than not the movant's likelihood of success on the merits. See Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir.1993) ("The *sine qua non* of [the four-factor] formulation is whether the plaintiffs are likely to succeed on the merits."). The importance of that inquiry is magnified in trademark cases because the resolution of the other three factors will depend in large part on whether the movant is likely to succeed in establishing infringement. See Keds Corp. v. Renee Int'l Trading Corp., 888 F.2d 215, 220 (1st Cir. 1989); see also I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 33 (1st Cir. 1998) (noting that irreparable harm can be assumed if a trademark holder demonstrates that it is likely to succeed in establishing infringement). This emphasis on likelihood of success is fully consistent with the tenet that, as a matter of public policy, trademarks should be protected against infringing uses. See Volkswagenwerk Aktiengesellschaft v. Wheeler, 814 F.2d 812, 820 (1st Cir. 1987).

Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 115 (1st Cir. 2006).

## I.     BAIN IS LIKELY TO SUCCEED ON THE MERITS OF ITS TRADEMARK CLAIMS.

Section 43(a) of the Lanham Act imposes liability on any person who uses in commerce, in connection with goods or services:

> any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person. . . .

15 U.S.C. §1125(a). The stated intent of the Lanham Act is to protect persons engaged in commerce against unfair competition, and "to prevent fraud and deception in such commerce." 15 U.S.C. §1127. For purposes of preliminary injunctive relief, a plaintiff must show that it is likely to succeed in showing "both that its mark merits protection and that the allegedly infringing use is likely to result in consumer confusion." Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 116 (1st Cir. 2006).

Once a violation of the Lanham Act is demonstrated, injunctive relief will readily issue. Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd., 604 F.2d 200, 205 (2d Cir. 1979). Courts base such relief on the trademark holder's "inability to control the nature and quality of the infringer's goods . . . not because the infringer's goods are necessarily inferior." Wesley-Jessen Div. of Schering Corp. v. Bausch & Lomb, Inc., 698 F.2d 862, 867 (7th Cir. 1983); see Polymer Tech. Corp. v. Mimran, 975 F.2d 58, 62 (2d Cir. 1992), as amended (Nov. 25, 1992) (holding that "actual quality of the goods is irrelevant: it is the control of quality that a trademark holder is entitled to maintain").

## A.    Bain's Trademarks Are Valid Marks Entitled To Protection.

It is unlikely that Woods would challenge the protectability of the Bain Marks.  If he did, such a challenge would certainly fail.  Bain's trademark for "Bain & Company," an identical mark to one of Woods's chosen names for his consulting business, is federally registered, has been used in interstate commerce since approximately 1973, and has been in continuous use for at least five years subsequent to its registration.  As a result, Bain & Company is considered an incontestable trademark under section 15 of the Lanham Act.  See 15 U.S.C. §1065.  The registration of an incontestable mark "shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce."  15 U.S.C. §1115(b); see also Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 117 (1st Cir. 2006).  An incontestable mark may not be challenged on the basis that it is merely descriptive, or lacks acquired distinctiveness.  See Park'N Fly, Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189 (1985).

Bain's other marks, including "Bain," for which a registration application is pending, are likewise entitled to protection.  See Borinquen, 443 F.3d at 117 (holding that both registered and unregistered marks may qualify for protection).  Because these marks are not generic,

descriptive, or even suggestive of consulting services in their own right, they are deemed at least "arbitrary" on the scale that runs from generic (which is not protectable), to descriptive (which is protectable if there is secondary meaning), to suggestive, to arbitrary, and to fanciful. Suggestive, arbitrary, and fanciful marks are "inherently distinctive." Id. at 116. "Inherently distinctive marks are protected from the time of initial use without proof of secondary meaning." Commerce Bank & Trust Co. v. TD Banknorth, Inc., 554 F. Supp. 2d 77, 84 (D. Mass. 2008).

**B.     Consumers Are Likely To Be Confused By Woods's Use of Bain's Trademarks And Trade Names.**

Woods is using marks – Bain, Bain and Company, and Bain Consulting Group – that are identical in whole or in part to the Bain Marks to identify, market, and advertise competing consulting services. In so doing, he is unambiguously evoking Bain's brand as a well-known and leading consulting firm.

The First Circuit has set forth eight factors to guide the assessment of likelihood of consumer confusion:

> (1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of the plaintiff's mark.

Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 120 (1st Cir. 2006). No factor is dispositive. Id. Furthermore, a plaintiff need not show actual confusion, but only a likelihood of confusion if the infringement continues. Id.

Of those eights factors, all that are relevant in this circumstance demonstrate a likelihood of confusion. Each of the names that Woods is using is either identical or substantially similar to the Bain Marks, including Bain & Company and Bain, such that a consumer – particularly one looking for business and management consulting services of the type Bain provides – could

easily be confused as to whether Woods's Bain consulting business is the same company as, or

somehow affiliated with, the Bain that has been in existence for nearly 40 years.  That Woods's

purported business offers to consumers the same services as Bain is evident from a comparison

of Woods's service descriptions and marketing materials.  In fact, Woods has now admitted

expressly that he is intending to offer services that compete with what Bain offers: "I have and

always will be competitive with regard to my marketing."  Herman Decl. Exh. G.  Woods's

misappropriation of copyrighted content from Bain's website for use on his website located at

www.bainconsutinggroup.com is further clear evidence that Woods was holding himself out as

offering services similar to, if not the same as, those services that Bain provides.  More

specifically, as mentioned above, Woods used the following content on his website, located at

www.bainconsultinggroup.com, to describe his consulting services:

> Bain is the consulting firm the business leaders come to when they want long term
> results, and a partner who cares as much as they do about getting them.  Together, we
> find value across boundaries, develop insights they act on, and energize their culture to
> sustain profitable success.

Major Decl. Exh. C.  This content is virtually identical to Bain's (copyrighted) content on its

website:

> Bain & Company is the consulting firm the world's business leaders come to when they
> want enduring results, and a partner who cares as much as they do about getting them.
> Together, we find value across boundaries, develop insights they act on, and energize
> their teams to sustain success.

Miller Decl. Exh. A.  The similarity of the marks at issue and the similarity of the services for

which they are being used strongly support a finding of likelihood of confusion.

Woods's actions not only reflect the nature of the services that Woods is offering, as

compared to Bain's services, but also that he desires his company to be viewed as in the same

market and as offering the same services to the same type of business customers as Bain, and that

he is using the same means of internet advertising and marketing as Bain.  See Commerce Bank

& Trust Co. v. TD Banknorth, Inc., 554 F. Supp. 2d 77, 86 (D. Mass. 2008) (noting that "[t]he relationship between the parties' channels of trade, the relationship between their advertising, and the classes of their prospective purchasers are normally considered together"). In short, the parties' potential customers (those buying business and management consulting services), channels of trade, and method and subject of advertising, including in particular the use of websites to promote their services, are substantially similar, if not identical. And to the extent Woods temporarily may have suggested a ratcheting back of his online marketing efforts using the Bain name (although refused to cease them completely), he has now asserted unambiguously that he will be "using the name Bain or Bain consulting group to my pleasure," and that he has given an "instruct[ion] to reopen the Bain Consulting Group." Herman Decl. Exh. G.

As for Woods's intent, there can be little doubt. He chose to use identical or near-identical trade names as those used by Bain, in the context of offering business and management consulting services such as those that Bain offers, and did so by literally copying material from Bain's website for use on his website, where he also used the Bain Marks. When confronted with his infringement, Woods's first reaction was to demand $20,000 to sell the domain name to Bain. He followed this demand with the assertion on April 2, 2012 that, "[y]ou understand how to settle this matter to my satisfaction." As such, Woods's attempts to divert potential Bain customers to his business, and to trade off the renown and goodwill associated with the Bain name, are clear.

Finally, the Bain Marks are of the particularly strong variety. As discussed above, as an incontestable mark, Bain & Company is presumptively distinctive, and Bain's other marks, as arbitrary marks, are inherently distinctive, and thus especially strong to the extent they are tied to Bain's consulting services. See Commerce Bank, 554 F. Supp. 2d at 86 (D. Mass. 2008)

(holding that even suggestive marks are generally considered strong marks); TriMark USA, Inc.

v. Performance Food Group Co., LLC, 667 F. Supp. 2d 155, 169 (D. Mass. 2009) (considering

presumption of right to exclusive use that accompanies registration as factor in assessing a

mark's strength).  In addition, also relevant to determining the strength of a mark are the length

of time it has been used and the owner's renown in the industry.  Borinquen, 443 F.3d at 121;

TriMark, 667 F. Supp. 2d at 168.  The degree of recognition that the Bain name has achieved,

and Bain's reputation, are illustrated by the recent accolades from industry sources and

publications discussed above (see supra at 4-5).  Furthermore, Bain has used the Bain Marks for

almost 40 years, since at least 1973.  See TriMark, 667 F. Supp. 2d at 168 (relying, as factor in

favor of finding that a mark was strong, that the holder has used the mark for "nearly a decade").

And perhaps most telling as to the strength of the Bain Marks is the fact that Woods purposefully

chose the Bain name for his consulting business, with the clear intention of trading off of Bain

and its work in the industry, as evidenced by his not only using Bain's name, but also combining

it with Bain's marketing language for his own use in further promoting his business.[1]

---

[1] Of the eight factors on which the First Circuit has focused, this leaves only evidence of actual confusion.  While evidence of actual confusion can be powerful evidence in demonstrating a likelihood of confusion, the First Circuit has made clear that where the parties' offerings have not co-existed in the market over a long period of time, a history of actual confusion becomes less relevant.  In fact, the First Circuit has held that it has "attached substantial weight to a trademark holder's failure to prove actual confusion only in instances in which the relevant products have coexisted on the market for a long period of time."  Borinquen, 443 F.3d at 121.  As the First Circuit has also held, a plaintiff must not be forced to "stand by and await the dismal proof" that consumers are actually confused.  DeCosta v. Columbia Broadcasting Sys., Inc., 520 F.2d 499, 514 (1st Cir. 1975).  This is particularly apt where, as here, a plaintiff has acted swiftly to seek injunctive relief before the defendant's infringing conduct has been able to cause considerable economic damage in the market.  Woods's use of the Bain Marks was discovered only in the last month or two, and Bain is unaware of any indication that he was using it to promote his services for significantly longer than that.  In fact, Woods registered the www.bainconsultinggroup.com domain only in January 2012.  See Major Decl. ¶ 6.  Accordingly, this factor is of no relevance here.

Because the relevant factors overwhelmingly point to a likelihood of confusion, Bain's likelihood of success on its trademark claim is high, if not close to certain.

## II.     AN INJUNCTION IS NECESSARY TO PREVENT IRREPARABLE HARM

"In the context of trademark litigation, irreparable harm is generally presumed if a plaintiff demonstrates a likelihood of success on the merits." Commerce Bank & Trust Co. v. TD Banknorth, Inc., 554 F. Supp. 2d 77, 88 (D. Mass. 2008); Plum Island Soap Co., LLC v. Danielle and Co., No. 11–11033–NMG, 2011 WL 3680166, at *4 (D. Mass. Aug. 19, 2011) (same).  Courts have consistently held that theft of intellectual property constitutes irreparable harm.  See, e.g., Concrete Machinery Co. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 611 (1st Cir. 1988) ("[I]rreparable harm is usually presumed if likelihood of success on the copyright claim has been shown.").

Bain has valid, protectable trademarks (including two incontestable trademark registrations) which are being blatantly misappropriated by Woods in an effort to sell his consulting services.  The misuse has continued despite multiple demands that it cease.  In fact, such demands have been met with hostile, threatening responses, including declarations of "guerrilla war," clearly designed to attempt to cause Bain hesitation in enforcing its intellectual property rights.  Those responses have been accompanied by demands for money to transfer ownership of a domain name containing the protectable mark.  Woods still controls that domain name, could begin using it again at any time in the absence of an injunction, and on April 2, 2012 asserted his intention to do just that.  In short, it is difficult to imagine a clearer instance of trademark infringement, and Woods has demonstrated that without an injunction, he will continue his use of the Bain Marks.  Such ongoing use, if not stopped by this Court, deprives Bain of control over and the full value of its intellectual property, and threatens lasting harm to the value of the Bain Marks.

III.     **THE BALANCE OF HARMS AND THE PUBLIC
         INTEREST SUPPORT AN INJUNCTION.**

"[I]t is generally true that the harm to the defendant flowing from an injunction where

infringement appears likely is entitled to less consideration than other harms." Commerce Bank

& Trust Co. v. TD Banknorth, Inc., 554 F. Supp. 2d 77, 88 (D. Mass. 2008) (internal quotation

marks omitted).  Because Woods has no legitimate claim to the Bain Marks, there is no

cognizable harm to him from an injunction to weigh against the harm to Bain if he were allowed

to continue in his misconduct.  Furthermore, Woods himself admitted, in his March 5, 2012

email to Bain's in-house counsel, that "[t]here isn't really an advantage to us for using the Bain

name."  If Woods is to be taken at his word, no harm should befall him or his business from

ceasing to use the Bain name.  In fact, he already stopped using, temporarily, the domain

www.bainconsultinggroup.com.  Requiring him to stop using the Bain Marks in other locations,

and to continue refraining from use of that domain name, is unlikely to cause him any harm,

much less harm that outweighs the harm to Bain by allowing him to continue.

As for the public interest, this Court has recognized that where there is a likelihood of

success on a trademark claim, the public interest, as a matter of course, favors the allowance of

an injunction due to the potential for consumer confusion:

> In trademark cases, the public interest almost always favors the granting of
> otherwise "appropriate injunctions."  Fritz, 944 F.Supp. at 97 (citing Concrete
> Machinery Co. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 612 (1st
> Cir.1988)).  Plaintiff here has demonstrated a likelihood of consumer confusion,
> and that showing "is enough to place the weight of public interest concerns in
> favor of granting the injunction."  Boustany, 42 F.Supp.2d at 113.

Commerce Bank & Trust, 554 F. Supp. 2d at 88.  The public interest in protecting a well-

respected and well-known brand such as Bain's brand, and in avoiding consumer confusion, is

strong.  Particularly in light of the strong showing of infringement here, the public interest

weighs heavily in favor of the requested injunction.

**Conclusion**

For the forgoing reasons, Bain respectfully requests that the Court issue a temporary restraining order in the form of the [Proposed] Temporary Restraining Order submitted herewith, followed by a preliminary injunction, enjoining Woods from further violations and misuse of Bain's intellectual property.

April 4, 2012                                Respectfully submitted,

                                             BAIN & COMPANY INC.

                                             By its attorneys,

                                             /s/ Joshua L. Solomon
                                             Barry S. Pollack (BBO #642064)
                                                bpollack@sandw.com
                                             Joshua L. Solomon (BBO #657761)
                                                jsolomon@sandw.com
                                             Amy Lyster (BBO #667263)
                                                alyster@sandw.com
                                             Sullivan & Worcester LLP
                                             One Post Office Square
                                             Boston, MA 02109
                                             Tele:  (617) 338-2800
                                             Fax:  (617) 338-2880

Certificate of Service

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 4, 2012.

/s/ Joshua L. Solomon